**William McNEIL, Plaintiff–Appellant,**

v.

**Mary A. LOWNEY, et al.,
Defendants–Appellees.**

No. 85–2663.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 6, 1987.

Decided Oct. 20, 1987.

Prof. Howard Eisenberg, Southern Illinois University School of Law, Carbondale, Ill., for plaintiff-appellant.

Jill A. Deutsch, Asst. Atty. Gen., Civil Appeals Div., Chicago, Ill., for defendants-appellees.

Before WOOD, CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Appellant William McNeil, an inmate at the Pontiac Correctional Center (Pontiac), appeals from the judgment of the district court in favor of employees[1] of the Illinois Department of Corrections. In an action brought under 42 U.S.C. § 1983, Mr. McNeil alleged violations of his eighth and fourteenth amendment rights because of the denial of adequate medical care while confined at Pontiac. Mr. McNeil argues on appeal that the district court abused its discretion: 1) by denying his repeated motions for the appointment of counsel to represent him in his civil rights action, and 2) by denying his requests to depose the physicians who had treated him while he was confined and to subpoena such physicians to testify at trial. We hold that the district court did not abuse its discretion in either matter. Therefore, we affirm the judgment of the district court.

## I

### Background

While an inmate at Pontiac, Mr. McNeil developed medical problems associated with a prescription medication that he took for jaw pain following a tooth extraction. He was examined by a consulting physi-

cian, Dr. Batambuze, on May 4, 1983. In a memorandum to the Pontiac medical department, Dr. Batambuze ordered that arrangements be made for Mr. McNeil's "Admission as a Medical Case." R.4, Ex. B. A physician at Pontiac, Dr. Otten, spoke with Dr. Batambuze on the day of the examination and ordered Mr. McNeil admitted to the hospital at Pontiac. Mr. McNeil, however, was not hospitalized; he was returned to his cell.

In early June, Mr. McNeil asked one of the appellees, Ms. Ranseyer, why he had not been admitted to the hospital in accordance with Dr. Batambuze's order. Mr. McNeil was told that his file did not contain Dr. Batambuze's memorandum ordering hospitalization. In July, Mr. McNeil requested and received from Dr. Batambuze the missing memorandum and gave copies to each of the defendants. Dr. Batambuze's order was not followed.

Mr. McNeil was seen by several physicians and paramedical staff during May, June and July 1983. On August 7, 1983, at Pontiac, he saw Dr. Horton who verbally ordered that the appellant be admitted to the hospital "as soon as it can be arranged." R.4, Ex. D. Prison rules establish that a prisoner may be transferred to a hospital only by order of a treating physician, and with the approval of Ms. Lowney, the hospital administrator. However, when Dr. Batambuze, the consulting physician, was contacted, he wanted to evaluate Mr. McNeil in his office before admitting him to the hospital. An appointment was scheduled and the appropriate medical furlough papers were completed and approved, but the appellant refused to be transported for medical tests necessary for such an evaluation. The appointment with Dr. Batambuze was cancelled and no hospitalization order from the doctor issued.

Mr. McNeil continued to seek attention from the medical staff at Pontiac throughout the fall of 1983. He received some sort of medical treatment at every visit to the prison clinic. In late November 1983, Dr. Manabat, a staff physician, recommended

---

**1.** The defendants-appellees are the Health Care Unit Administrator, Assistant Medical Records Director, Assistant Warden for Programs, and the Assistant Warden for Operations at Pontiac.

again that Mr. McNeil be admitted on an elective basis to a community hospital. Mr. McNeil was admitted to the hospital in December 1983; his condition was determined to be the result of the pain medication.

## II

## Proceedings Under Review

Mr. McNeil filed a *pro se* complaint on August 16, 1983, pursuant to 42 U.S.C. § 1983, alleging that various employees of the Illinois Department of Corrections denied him adequate medical care in violation of the eighth and fourteenth amendments. He sought damages for the alleged violation of his constitutional rights.

Appellant was granted leave to proceed *in forma pauperis*. Before trial, he filed a motion with the district court for appointment· of counsel pursuant to 28 U.S.C. § 1915(d). The court denied the motion, explaining that:

> the plaintiff has raised an apparently non-frivolous claim against the defendants. The facts and legal issues, however, are not so complex that counsel is needed. In examining the documents that he has submitted, the plaintiff appears fully able to investigate the facts in his attempt to prove a deliberate indifference to his serious medical need. The plaintiff appears fully capable of participating in discovery and prosecuting his lawsuit without the benefit of an attorney. Consequently, appointment of counsel is not warranted in this action.

*McNeil v. Lowney*, No. 83–2352, order at 2 (C.D.Ill. Sept. 12, 1984) [hereinafter 1984 Order]; R. 29 at 2. Appellant renewed his motion for appointment of counsel in February 1985 and at the start of the trial. Tr. at 7. Both motions were denied.

In July 1984, Mr. McNeil filed motions requesting that five witnesses be subpoenaed for depositions before trial. The motions were denied. R. 18; R. 19; R. 20; R. 21. The defendants stated in their pre-trial statement that they intended to call twelve witnesses, including six physicians. R. 32. In his own pre-trial statement, filed Decem-

ber 24, 1984, Mr. McNeil had requested that the court appoint five of the same physicians as expert witnesses. R. 30. In July 1985, in a conference call, the defendants informed the court that they would call only one unnamed physician. No subpoenas were issued by the court. Ultimately, none of the physicians testified at the trial; the deposition of Dr. Manabat was read into the trial record. Tr. at 157–69.

The case was tried before a magistrate and without a jury in August 1985. Mr. McNeil represented himself, while the defendants were represented by two Assistant Attorneys General. In September 1985, the magistrate issued an order denying the defendants' motion for a directed verdict. At the same time, however, the magistrate entered judgment in favor of the defendants on the merits. The court held that the evidence did not support a finding that the defendants were deliberately indifferent to Mr. McNeil's serious medical needs by failing to have him admitted either to a community hospital or to the prison's hospital. There was unrefuted testimony that Dr. Batambuze's hospitalization order had not been placed in Mr. McNeil's medical file. Consequently, the court noted, the defendants were not aware that Dr. Batambuze had ordered Mr. McNeil's hospitalization until the appellant gave them a copy of the order. The court concluded that, having had no knowledge of Dr. Batambuze's order, the defendants could not have been deliberately indifferent to Mr. McNeil's need for hospitalization. Furthermore, the court noted that Mr. McNeil was seen by a physician at the prison on an almost weekly basis and that the defendants did nothing to prevent Mr. McNeil from making these visits. "If [Mr. McNeil's] health was in serious danger by the failure to place him in the prison hospital, surely one of the examining physicians would have acted. The failure of these physicians to act again exonerates the inaction of these defendants." *McNeil v. Lowney*, No. 83–2352, order at 5 (C.D.Ill. Sept. 13, 1985); R. 40 at 5. While judgment was in favor of the defendants, the court explicitly stated that Mr. McNeil had put forth

sufficient evidence in his case in chief to establish a prima facie case.

### III

### Discussion

#### A. *Denial of the Motion for Appointed Counsel*

Mr. McNeil argues before this court that the district court abused its discretion by denying his motion for the appointment of counsel pursuant to 28 U.S.C. § 1915(d).[2] He contends that he was denied meaningful discovery and "was left to his own devices to adduce the evidence essential to sustain [his] claim." Appellant's Br. at 14. Further, the appellant asserts that he was not "in a position to contest the assertions of the [appellees] about what occurred or to investigate the facts of his case because he was denied all access to the treating physicians who could have verified or refuted the declarations made at trial regarding their orders and modification of orders." *Id.* at 15. "Without the assistance of counsel, [Mr. McNeil] was helpless to investigate and present facts which might have refuted the assertions of [the appellees]." *Id.* Mr. McNeil cites *Maclin v. Freake,* 650 F.2d 885 (7th Cir.1981), to support his assertion that "[i]n a medical case it is particularly essential to have an attorney 'to elicit relevant, comprehensible testimony that will elucidate for the fact-finder the treatment he received and the adequacy of that treatment.'" Appellant's Br. at 15–16 (quoting *Maclin,* 650 F.2d at 889). Here, argues the appellant, he "required counsel to assist him in developing evidence to show both that the conduct of the [appellees] constituted 'deliberate indifference' and that he had 'serious medical needs.'" *Id.* at 16.

■ A district court has the authority under 28 U.S.C. § 1915(d) to appoint counsel to represent a litigant proceeding *in forma pauperis.* The decision whether to appoint counsel for a civil litigant is within the court's discretion and, thus, the denial

of a motion for the appointment of counsel is reviewable only for an abuse of discretion. *Childs v. Duckworth,* 705 F.2d 915, 922 (7th Cir.1983); *McKeever v. Israel,* 689 F.2d 1315, 1318 (7th Cir.1982); *Maclin,* 650 F.2d at 886; *accord Hodge v. Police Officers,* 802 F.2d 58, 60 (2d Cir.1986) (explicitly following *Maclin* ); *Whisenant v. Yaum,* 739 F.2d 160, 163 (4th Cir.1984). The "denial of counsel will not be overturned unless it would result in fundamental unfairness impinging on due process rights." *Maclin,* 650 F.2d at 886; *see McKeever,* 689 F.2d at 1320.

While the threshold for reversal of a district court's denial of a motion for the appointment of counsel is high, "to say that a district court may exercise discretion is not to say that such discretion is unreviewable. Discretionary choices 'are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Ekanem v. Health & Hosp. Corp.,* 589 F.2d 316, 319 (7th Cir. 1978) (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975)). This circuit has set forth criteria to guide the district courts in their decisions whether to appoint counsel under section 1915(d). "The decision must rest upon the court's consideration of all the circumstances of the case, with particular emphasis upon certain factors that have been recognized as highly relevant to a request for counsel." *Maclin,* 650 F.2d at 887.

■ The district court's initial inquiry should be whether the claim is of sufficient merit. "Even [if] the claim is not frivolous, it does not follow that the indigent litigant has the right to the appointment of counsel if his chances of success are extremely thin." *Childs,* 705 F.2d at 922. Next, the court should consider: 1) the party's ability to investigate adequately the crucial facts related to the claim; 2) whether the only evidence presented to the factfinder is conflicting testimony, thus requiring the skills of counsel to ensure that the truth will

---

**2.** 28 U.S.C. § 1915(d) provides in pertinent part: "The court may request an attorney to represent

any such person unable to employ counsel...."

come out; 3) whether the indigent litigant has the capacity to present the case; and 4) the complexity of the legal issues. *Id.; Merritt v. Faulkner*, 697 F.2d 761, 764 (7th Cir.), *cert. denied*, 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983); *McKeever*, 689 F.2d at 1321; *Maclin*, 650 F.2d at 887–88.

The district court first denied Mr. McNeil's motion for the appointment of counsel in its September 1984 order. The court, first, recognized its obligation to consider those factors set forth by this court in *Maclin* and discussed above. The court then stated:

> The plaintiff has raised an apparently non-frivolous claim against the defendants. The facts and legal issues, however, are not so complex that counsel is needed. In examining the documents that he has submitted, the plaintiff appears fully able to investigate the facts in his attempt to prove a deliberate indifference to his serious medical need. The plaintiff appears fully capable of participating in discovery and prosecuting his lawsuit without the benefit of an attorney. Consequently, appointment of counsel is not warranted in this action.

1984 Order at 2; R.29 at 2. The district court exercised its discretion according to the relevant standards. This case is not one in which the court based its decision on an impermissible factor, *see, e.g., Hodge*, 802 F.2d at 62 (no consideration of whether indigent litigant's claim was likely to be of substance); *Caruth v. Pinkney*, 683 F.2d 1044, 1049 (7th Cir.1982) ("a request for appointment of counsel should not be denied solely for the reason that an attorney who takes the case may not be compensated for his efforts"), *cert. denied*, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983), or failed to exercise its discretion at all, *see, e.g., McKeever*, 689 F.2d at 1319. Rather, the district court evaluated the appellant's circumstances in light of the relevant factors and determined that the appointment of counsel was not required.

■ Our review of the record convinces us that the district court properly exercised its discretion in this case. We cannot say that the denial of appointed counsel result-ed in fundamental unfairness impinging on due process rights. Mr. McNeil was capable of adequately investigating the disputed factual issues: He requested and obtained copies of the relevant medical records, which he attached as exhibits to his pleadings. Although this case does involve medical treatment, the adequacy of which is often beyond the non-medical person's ability to evaluate, the issue was not the adequacy of the medical treatment provided by the physicians. Rather, the issue was whether the nonphysician prison officials were deliberately indifferent to Mr. McNeil's medical needs in not securing his hospitalization at an earlier date. Unlike *Merritt*, "complex medical evidence" is not at the heart of the case. *See Merritt*, 697 F.2d at 765. On consideration of Mr. McNeil's motion for summary judgment, the district court determined that the genuine issues of material fact were "whether the plaintiff was in fact ordered admitted to a community hospital or whether the plaintiff's physicians wished to review the plaintiff's medical conditions further prior to admittance to any hospital," and "what specific date, if any, the plaintiff was ordered admitted to St. James Hospital." R.14 at 6. Those factual disputes are not so complex that counsel would be required to investigate them. This case is distinguishable from *Merritt*, 697 F.2d at 765, in which the litigant was blind, and *Maclin*, 650 F.2d at 889, in which the litigant was a paraplegic. In both of those cases, the physical disabilities of the litigants prevented them from being able to investigate the facts germane to their claims.

The record reveals that the evidence submitted at the bench trial was not solely conflicting testimony requiring skilled cross-examination by counsel to reveal the truth. Further, Mr. McNeil demonstrated the ability to present his case to the court: He was able to state his claim in a complaint to which he attached exhibits; he responded appropriately to the court's order to submit a more definite and complete statement in the form of an amended complaint; he submitted interrogatories for the defendants; he filed a motion for summary judgment with exhibits attached; he filed a

"Motion to Strike Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment," with an attached affidavit and exhibits; and he made a direct statement at the trial and cross-examined the defendants' witnesses. Morever, the legal issues were not so complex, nor the law so unclear, that it was necessary "to have both sides of a difficult legal issue presented by those trained in legal analysis." *Maclin,* 650 F.2d at 889. Our reading of the record also convinces us that the presiding magistrate was sensitive to the absence of counsel for the plaintiff and carefully conducted the proceeding to ensure full exposition of the issues. We conclude that the district court did not abuse its discretion in denying the appellant's motion for the appointment of counsel.

In reaching this conclusion, we emphasize that the abuse of discretion standard, while obviously deferential to the judgment of the trial court, is not a toothless one. Our conclusion in this case is based, as it must be in each case, on a careful examination of the record. Each case must be reviewed in this manner. It would be a mistake for the bench and bar to interpret our holding today as indicating any general relaxation of the standards enunciated in our earlier cases. Indeed, we explicitly confirm and rely upon those standards today.

### B. *Denial of the Requests for the Issuance of Subpoenas*

The appellant also argues that the district court abused its discretion by denying his requests for the issuance of subpoenas to compel the testimony of the treating physicians. Mr. McNeil argues that, "without counsel and without the ability to compel the physicians to testify, [he] was denied meaningful access to the court and was denied due process of law in presenting his claim." Appellant's Br. at 18. Appellant contends that "[i]t is apparent ... that without his original treating physician's testimony or that of the other doctors who ordered [him] to be hospitalized it would be impossible for [him] to sustain his burden of proof." *Id.* at 19. He asserts that:

The testimony of one or more of these physicians was critical to showing: (1) what their actual orders were and the chronology of events; (2) the procedures followed by the physicians when communicating information to Defendants; (3) the nature of the doctors' communications with the Defendant[s] in reference to this Plaintiff; (4) the seriousness of Plaintiff's condition when he was seen by the doctors; and (5) the extent Plaintiff was injured by the delays in having him hospitalized.

*Id.* at 20.

■ In this civil action, the district court's decision to deny the appellant's requests for the issuance of subpoenas is reviewable under the abuse of discretion standard. *See Gibbs v. King,* 779 F.2d 1040, 1047 (5th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986); *Lloyd v. McKendree,* 749 F.2d 705, 706–07 (11th Cir.1985). The appellant, proceeding *in forma pauperis,* was unable to pay witness fees. "Only where such fees may be waived by statute can a party seek such a waiver." *Johnson v. Hubbard,* 698 F.2d 286, 289 (6th Cir.), *cert. denied,* 464 U.S. 917, 104 S.Ct. 282, 78 L.Ed.2d 260 (1983). Section 1915 does not provide the necessary statutory authority for the waiver of Mr. McNeil's witness fees. *Hubbard,* 698 F.2d at 289–90; *see also United States Marshals Serv. v. Means,* 741 F.2d 1053, 1056 (8th Cir.1984). Subsection (c) states: "Witnesses shall attend as in other cases...." 28 U.S.C. § 1915(c). The district court had no statutory authority for waiving the payment of witness fees for Mr. McNeil and, in that regard, cannot be held to have abused its discretion by denying the appellant's requests for the subpoenaing of witnesses.

■ Moreover, the right of access to the courts does not independently include a waiver of witness fees so that the indigent litigant can present his case fully to the court. *Hubbard,* 698 F.2d at 289. Nor has the district court denied Mr. McNeil fundamental fairness in violation of his due process rights under the circumstances of this case. The physicians were not the sole

source of the information that the appellant argues was critical to his case. For example, Mr. McNeil had the medical records evidencing the physicians' orders, the chronology of the case and the seriousness of his condition when he was seen by the physicians. In addition, he could cross-examine the defense witnesses about the procedures used when the physicians communicated information to the prison officials, and about the nature of the physicians' communications with the prison officials regarding the appellant. Finally, Mr. McNeil was present at the deposition of Dr. Manabat, who treated him when he was finally hospitalized. While he did not ask any questions at the deposition, Mr. McNeil had the opportunity to question Dr. Manabat regarding any alleged injuries resulting from the delay in his hospitalization. Accordingly, we cannot say that the appellant was denied either access to the courts or fundamental fairness through the district court's denial of his requests.[3]

Finally, the appellant notes that his submission with respect to the appointment of counsel and his submission with respect to subpoenas are inextricably related and must be evaluated together. This argument, as a general proposition, is valid. Certainly, the inability of an indigent party in a civil case to subpoena witnesses does, of course, affect the party's ability to investigate adequately the crucial facts related to the claim. *See Childs,* 705 F.2d at 922. Therefore, this factor must be considered in determining whether counsel should be appointed.

While we agree with the appellant that his two arguments are interrelated and trust that district courts will weigh this interrelationship in future cases, we do not believe that our acknowledgment of this principle is of any help to Mr. McNeil in this case. When Mr. McNeil renewed his request for counsel at trial, the magistrate,

in denying the request, was well aware that Mr. McNeil would not be able to subpoena the treating physicians. He also was aware that the defendants would not call all of them[4] and thus make them available to Mr. McNeil for cross-examination. As we have already noted, on this record, we do not believe that the magistrate abused his discretion in denying Mr. McNeil's request for counsel. The testimony of the physicians was not essential. Mr. McNeil was able to present the essence of his case from other sources.

## IV

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

---

3. Fed.R.Evid. 614(a) permits the court to call witnesses on its own motion. Given the appellant's access to sufficient information through alternative sources, we do not believe, on the facts of this case, that the district court was required to exercise that prerogative.

4. The defendants stated in their pre-trial statement that they would call, among others, the five physician witnesses whose testimony Mr. McNeil desired. They later informed the court, via telephone, that they would call at trial only one unnamed physician. Ultimately, the defendants presented only the deposition of Dr. Manabat.