**Courtney ARMSTEAD, Plaintiff–Appellant,**

v.

**Dawn MACMILLAN, et al., Defendants–Appellees.**

No. 01–3637.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 16, 2002.*

Decided Jan. 8, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before FAIRCHILD, EVANS, and WILLIAMS, Circuit Judges.

## ORDER

Indiana inmate Courtney Armstead alleged that prison guards Dawn MacMillan, Charles Woods, and Howard Morton violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from an attack by other inmates. The district court permitted Armstead to proceed *in forma pauperis* under 28 U.S.C. § 1915, and ultimately a jury found for the defendants. On appeal Armstead challenges the district court's refusal to (1) enlist counsel; (2) permit him to amend his complaint; (3) issue a subpoena for former inmate Richard Hurd; and (4) admit Hurd's discovery deposition into evidence at trial. We affirm.

On August 17, 1997, a group of inmates severely beat Armstead and Hurd with locks attached to belts, and the two men sustained serious head wounds that required stitches. Armstead alleged that MacMillan, Woods, and Morton failed to protect him from the assault. He claimed that when E-dormitory inmates began ridiculing and threatening him after his transfer there, he alerted MacMillan and Woods several times and Morton once. During these conversations Armstead supposedly relayed the nature of the threats and requested that he and Hurd be moved to another area. Armstead stated that the defendants did not ask him to identify the responsible inmates or offer protective custody, and Armstead did not volunteer the inmates' identities or request protective custody.

After Armstead filed his complaint in August 1998, he twice requested that the district court enlist counsel to help him prepare for trial. The district court denied the first motion because Armstead failed to provide evidence that he had sought counsel on his own. The court denied Armstead's second motion because it found Armstead to be competent to try the case himself—the case was not "particularly complex," and Armstead had "articulated his claims quite plainly" and "diligently proceeded with the case."

The district court then set a December 17, 1998, deadline for amendments to the pleadings, and a June 1, 1999, deadline for completion of discovery and dispositive motions. Armstead moved the court three times to extend the amendment deadline. The district court granted the first and third motions, but denied the second, setting the final discovery deadline for September 1, 1999, the final amendment deadline for September 15, 1999, and the final dispositive-motion deadline for October 15, 1999. At no time did Armstead file an amended complaint or motion to amend.

Before and during trial, Armstead sought approval to introduce testimony from Hurd, either live or through his discovery deposition. Armstead initially filed a motion requesting that the district court issue a subpoena for Hurd to testify at trial, but the court refused because Armstead did not pay the witness fee required by Federal Rule of Civil Procedure 45(b)(1). During trial, Armstead then offered Hurd's deposition testimony. Hurd's testimony revealed that when inmates were threatening Armstead, the same inmates were threatening him, and that he, like Armstead, informed MacMillan and Woods of the threats but did not request protective custody. Hurd also explained that he could have identified the inmates, but neither MacMillan nor Woods asked him to do so. The district court refused to admit Hurd's deposition, rea-

soning that Armstead had failed to satisfy the requisites for admission under Federal Rule of Evidence 804(a) or Federal Rule of Civil Procedure 32(a)(3), and because Hurd's testimony was in any event irrelevant.

On appeal Armstead first argues that the district court should have enlisted counsel to assist him, and we review this decision for an abuse of discretion. *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir.1995). A court may request that counsel assist a civil litigant when, considering the complexity of the case, the litigant appears incompetent to try the case himself. *Id.* If the litigant is not competent, the court will then consider if counsel's assistance would change the outcome of the case. *Id.* This case focused on the defendants' liability for their alleged failure to protect Armstead from being severely beaten by other inmates and involved potentially complex issues regarding the issuance of subpoenas for witnesses. Armstead's submissions in the district court, however, demonstrate that he was capable of conducting legal research and articulating legal arguments. Considering the potential complexity of Armstead's case, the court found him to be competent to try the case himself, and although we may not agree, we cannot say that the court's ruling was an abuse of its discretion.

Next, Armstead argues that the district court "decided not to permit" him to amend his complaint, and in his brief he alleges that former defendants Charles Penfold, Larry Ludwig, and Mark Spohn conspired to engage in unspecified retaliation to "cover-up" the failure of the defendant guards to protect him. We review a refusal to allow an amendment only for an abuse of discretion. *Cacia v. Norfolk & W. Ry.*, 290 F.3d 914, 921 (7th Cir.2002). But, in order to amend a complaint that

the defendants have answered, a plaintiff first must file a motion with the district court or obtain the defendants' consent. Fed.R.Civ.P. 15(a); *Cleveland v. Rotman*, 297 F.3d 569, 575 (7th Cir.2002). Because Armstead never moved to amend his complaint or obtained the defendant guards' consent to add a conspiracy claim to his complaint–he did submit three motions to extend the deadline for amending pleadings–the district court could not have abused its discretion.

With respect to Hurd, Armstead argues that the district court should have approved a subpoena for Hurd to testify at trial even though Armstead did not pay the required witness fee. We review a refusal to issue subpoenas only for an abuse of discretion. *McNeil v. Lowney*, 831 F.2d 1368, 1373 (7th Cir.1987). District courts do not have statutory authority to waive witness fees for indigent civil litigants like Armstead, *Marozsan v. United States*, 90 F.3d 1284, 1290–91 (7th Cir. 1996), and § 1915(d) does not authorize district courts to advance indigent civil litigants' witness fees, *United States Marshals Serv. v. Means*, 741 F.2d 1053, 1057 (8th Cir.1984) (en banc). Because Armstead did not pay the witness fee, the district court did not abuse its discretion when it declined to issue a subpoena for Hurd.

According to Armstead, however, the district court should have compensated for his indigent status by either calling Hurd as a witness for the court, *see* Fed. R.Evid. 614(a); *McNeil*, 831 F.2d at 1374 n. 3., or admitting Hurd's deposition testimony under Rule 804 or Rule 32(a)(3). However, to be admissible under any of these rules, Hurd's testimony had to have been relevant, and the district court found that it was not under Federal Rule of Evidence 404(b). We review the exclusion

of Rule 404(b) evidence for an abuse of discretion, *Treece v. Hochstetler*, 213 F.3d 360, 363 (7th Cir.2000), and we will reverse only if the decision is one with which no reasonable person could agree, *Roy v. The Austin Co.*, 194 F.3d 840, 843 (7th Cir. 1999).

Rule 404 excludes evidence of prior acts when used to prove that the individual acted in the same manner at a future time. Fed.R.Evid. 404(b); *see Huddleston v. United States*, 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (Rule 404(b) applies in civil cases). Armstead offered Hurd's testimony to prove that MacMillan and Wood ignored Hurd's concerns about his safety, thus suggesting the obvious inference that MacMillan, Wood, and Morton did the same to Armstead. As the district court correctly recognized, this use of Hurd's testimony was not permitted under Rule 404(b). *See In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 664 (7th Cir.2002); *Treece*, 213 F.3d at 363. Further, even if the proposed purpose of Hurd's testimony were permissible, Armstead lacked proof that the defendant guards were deliberately indifferent to Hurd, and without such proof the jury could not have reasonably inferred that the defendants were deliberately indifferent to him. *See Huddleston*, 485 U.S. at 690, 108 S.Ct. 1496 (Rule 404(b) evidence admissible if "jury could reasonably find the conditional fact . . . by a preponderance of the evidence"). Our review of Hurd's deposition convinces us that Hurd's contention that the guards were indifferent to his safety is no stronger than Armstead's. At best, both men made generalized complaints about threats to their safety, but asked for no protection and failed to disclose the details the defendants needed to assess and respond to the situation. *See Butera v. Cottey*, 285 F.3d 601, 606–07 (7th Cir.2002); *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir.1997). The district court,

therefore, did not abuse its discretion by not calling Hurd as its own witness or admitting Hurd's deposition testimony.

AFFIRMED.